IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 16-cv-02071-RM-KLM

JAMES RUDNICK,

     Plaintiff,

v.

RICK RAEMISCH,
JOHN CHAPDELAINE,
JENNIFER ANDERSON,
NICOLE WILSON,
ERIC HOFFMAN,
BROWN,
DAVID CUSTER,
DARREN COREY, and
WILLIAM SHERWOOD,

     Defendants.

_____

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

     This matter is before the Court on Defendants' **Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)** [#69][1] (the "Motion"). Plaintiff filed a Response [#82] in opposition to the Motion [#69], and Defendants did not file a reply before the time for doing so elapsed. Pursuant to 28 U.S.C. § 636(b)(1) and D.C.COLO.LCivR 72.1(c)(3), the Motion has been referred to the undersigned for recommendation. *See* [#70]. The Court has reviewed the Motion, the Response, the entire case file, and the applicable law, and is

_____

[1] "[#69]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF). This convention is used throughout this Recommendation.

sufficiently advised in the premises. For the reasons set forth below, the Court respectfully **RECOMMENDS** that the Motion [#69] be **GRANTED**.

## I. Background

Plaintiff, who proceeds pro se,[2] is a prisoner in the custody of the Colorado Department of Corrections ("CDOC") at the Sterling Correctional Facility. He initiated this action pursuant to 42 U.S.C. § 1983 against various prison officials on August 11, 2016. *Compl.* [#1]. On December 6, 2016, Plaintiff filed the Second Amended Complaint [#24], which is the operative pleading. Plaintiff challenges the replacement of his prescription eyeglasses with state-issued eyeglasses that he alleges are inadequate. He also challenges certain restrictions placed on his access to the prison's law library and his legal materials, and the alleged search and seizure of his property. *See id.* at 36-50. The specific allegations will be discussed in the Analysis below.

Plaintiff essentially brings seven claims: (1) blocked access to the courts in violation of the First Amendment; (2) seizure of his materials in violation of the Fourth Amendment; (3) denial of due process and equal protection with regard to accessing his legal files; (4) violations of his right to confidentiality; (5) retaliation in violation of the First Amendment; (6) medical deliberate indifference in violation of the Eighth Amendment; and (7)

---

[2] The Court must construe liberally the filings of pro se litigants. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, the Court should not be the pro se litigant's advocate, nor should the Court "supply additional factual allegations to round out [the pro se litigant's] complaint or construct a legal theory on [their] behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citing *Hall*, 935 F.2d at 1110). In addition, pro se litigants must follow the same procedural rules that govern other litigants. *Nielson v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994).

unconstitutional policies concerning administrative remedies.[3] Plaintiff requests declaratory and injunctive relief and money damages. *Id.* at 55-60.

On January 26, 2017, Defendants Vorwald, Deal, Reynolds, Sanchez, Jacobson, Holst, DeCesaro, Ward, and Coffman were dismissed with prejudice as legally frivolous due to lack of personal participation. *Order to Dismiss in Part and to Draw Case* [#29] at 4. Additionally, to the extent that Plaintiff seeks money damages against the individual Defendants in their official capacities, those claims were dismissed as barred by sovereign immunity. *Id.* On July 18, 2017, Defendant Samora was dismissed without prejudice for failure to serve. *Order* [#94] at 11. Defendants now seek to dismiss the remainder of Plaintiff's claims pursuant to Fed. R. Civ. P. 12(b)(6).

## II. Standards of Review

### A. Federal Rule of Civil Procedure 12(b)(6)

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994); Fed. R. Civ. P. 12(b)(6) (stating that a complaint may be dismissed for "failure to state a claim upon which relief can be granted"). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir.

---

[3] The pleadings only specifically identify three claims. The Court divides them further here in accordance with an earlier Order in this case. *See Order to Dismiss in Part and to Draw Case* [#29] at 4.

1999) (citation omitted).  To withstand a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain enough allegations of fact 'to state a claim to relief that is plausible on its face.'" *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Bell Atlantic Co. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) ("The complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support the plaintiff's allegations." (quoting *Twombly*, 550 U.S. at 570)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.  Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Id.* (brackets in original; internal quotation marks omitted).

To survive a motion to dismiss pursuant to Rule 12(b)(6), the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Christy Sports, LLC v. Deer Valley Resort Co.*, 555 F.3d 1188, 1191 (10th Cir. 2009).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," a factual allegation has been stated, "but it has not show[n][ ]that the pleader is entitled to relief," as required by Fed. R. Civ. P. 8(a).  *Iqbal*, 552 U.S. at 679 (second brackets added; citation and internal quotation marks omitted).

## B.    Qualified Immunity

Qualified immunity, in certain circumstances, protects government officials from litigation when they are sued in their individual capacities.  *See, e.g.*, *Harlow v. Fitzgerald*,

457 U.S. 800, 814-18 (1982). A government official is entitled to qualified immunity from liability for civil damages when his or her allegedly unlawful conduct did not violate any of the plaintiff's statutory or constitutional rights that (1) were "clearly established" at the time of the conduct, and (2) would have been known to a reasonable person in the official's position. *Harlow*, 457 U.S. at 818. A government official is entitled to qualified immunity in "[a]ll but the most exceptional cases." *Harris v. Bd. of Educ. of Atlanta*, 105 F.3d 591, 595 (11th Cir. 1997).

The threshold inquiry is whether the facts taken in the light most favorable to the plaintiff sufficiently allege a constitutional violation. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Id.* However, "if a violation could be made out on a favorable view of the parties' submissions," a court must "ask whether the right was clearly established." *Id.*; *see also Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (holding that although qualified immunity determination involves a two-part inquiry, if the plaintiff fails either inquiry reviewed in any order, no further analysis need be undertaken and qualified immunity is appropriate).

### III. Analysis

**A.      Claim One:  First Amendment Right to Access the Courts**

In Claim One, Plaintiff alleges that Defendant Anderson has denied him access to and has threatened to delete legal documents that he created from the prison computer system. *Second Am. Compl.* [#24] at 36, 37. Allegedly, Defendant Anderson has told him that the documents look like notes, which are not allowed to be printed or stored on the system. *Id.* at 37. He further alleges that he has been "denied access to print-outs and

copies on frivolous grounds," including unreasonable page limitations. *Id.* He also states that he has been denied access to law library appointments and the law library work station. *Id.* at 36. Specifically, he complains that there are fourteen work stations shared among 1,200 prisoners, Plaintiff has faced delays of up to six weeks between appointments, and that Defendant Anderson schedules Plaintiff for "assisting" other inmates more frequently than scheduling him to work on his own documents. *Id.* at 15, 16.

Access to the courts is a fundamental right protected by the Constitution, including the First Amendment right to petition the government for redress of grievances. *Nordgren v. Milliken*, 762 F.2d 851, 853 (10th Cir.1985). To successfully raise such a claim, "a prisoner must demonstrate actual injury from interference with his access to the courts – that is, that the prisoner was frustrated or impeded in his efforts to pursue a nonfrivolous legal claim concerning his conviction or conditions of confinement." *Gee v. Pacheco*, 627 F.3d 1178, 1191 (10th Cir. 2010) (citing *Lewis v. Casey*, 518 U.S. 343, 351-55 (1996)).

As Defendants argue, the pleadings fail to articulate any actual injury in support of Plaintiff's claim. *Motion* [#69] at 7. Plaintiff asserts that he "has recently found substantial constitutional cause for pursuit of state post[-]conviction relief from his case by the help of a jailhouse lawyer and legal research that exposes the invalidity of his conviction and sentence." *Second Am. Compl.* [#24] at 13. It is unclear from these vague allegations what the basis of Plaintiff's lawsuit or potential lawsuit is, and therefore ascertainment of whether it is frivolous or nonfrivolous is impossible. *See Gee*, 627 F.3d at 1191. Plaintiff's argument that he "need not present details of what his legal documents contain or what they are for" is directly contradicted by the law and therefore lacks merit. *See Response* [#82] at 11; *Gee*, 627 F.3d at 1191; *Wardell v. Duncan*, 470 F.3d 954, 959 (10th Cir. 2006)

(stating that conclusory allegations of injury will not suffice for a First Amendment retaliation claim). Additionally, as noted in the Recommendation to deny Plaintiff's motion for injunctive relief, "the docket demonstrates that Plaintiff has been able to prepare and submit numerous filings. He therefore does not appear to be hindered by his limited access to his legal work or law library access in the present case." *Recommendation* [#71] at 7. The Court finds that Plaintiff has not sufficiently alleged an actual injury stemming from interference with his access to the courts. *See Robbins*, 519 F.3d at 1247.

Finding that no constitutional violation has sufficiently been alleged, the Court concludes that Defendants are entitled to qualified immunity on this claim. *See Escobar v. Reid*, 668 F. Supp. 2d 1260, 1293 (D. Colo. 2009). The Court respectfully **recommends** that Claim One regarding restricted access to the courts be **dismissed without prejudice**. *See Reynoldson v. Shillinger*, 907 F.2d 124, 127 (10th Cir. 1990) (holding that prejudice should not attach to a dismissal when plaintiff has made allegations "which, upon further investigation and development, could raise substantial issues").

**B.    Claim Two: Search and Seizure of Property in Violation of Fourth Amendment**

Plaintiff alleges that Defendants conducted a cell search and confiscated and destroyed eyeglasses, shoes, books, headphones, "box," and typewriter ribbons worth $457.00. *Second Am. Compl.* [#24] at 18. He also alleges that Defendant Anderson violated his Fourth Amendment rights by searching through the content of Plaintiff's legal documents, not allowing him access to them during certain periods of time, refusing to print them out, sharing them with other people without Plaintiff's consent, and threatening to delete them because she incorrectly stated that they were improper notes. *Second Am.*

*Compl.* [#24] at 38.  The Court first considers Plaintiff's allegations with respect to the cell search and confiscated items.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV.  "[P]risoners are not protected under the Fourth Amendment from unreasonable searches of their prison cells or from the wrongful seizure of property contained in their cells because 'the Fourth Amendment does not establish a right to privacy in prisoners' cells.'" *Rodriguez-Rodriguez v. United States*, 4 F. App'x 637, 639 (10th Cir. 2001) (quoting *Hayes v. Marriott*, 70 F.3d 1144, 1146 (10th Cir. 1995)).  Thus, the search of Plaintiff's cell and confiscation of personal items did not violate Plaintiff's Fourth Amendment rights, and Defendants are entitled to qualified immunity on this claim.

Plaintiff alleges that confiscating his glasses left him "blind" (limited to vision less than four inches) and "disabled and exposed to [the] open prison environment . . . unable to function reasonably." *Second Am. Compl.* [#24] at 24, 26. He asserts that Defendants violated a "CDOC regulation not to take prisoners['] necessary medical device[s] or allow unethical conduct of [their] subordinates (or [themselves]) during regular operations." *Id.* at 25.  "While an inmate's ownership of property is a protected property interest that may not be infringed without due process, there is a difference between the right to own property and the right to possess property while in prison." *Hatten v. White*, 275 F.3d 1208, 1210 (10th Cir. 2002).

Plaintiff cannot prevail on this claim because the prison provided an administrative remedy – namely, the grievance procedure – to challenge the alleged seizure and destruction of his property.  *See Williams v. Mestas*, 355 F. App'x 222, 224 (10th Cir. 2009)

(finding prisoner's deprivation of property claim failed because administrative remedies provided by the prison); *Hudson v. Palmer*, 468 U.S. 517, 533 (1984) (explaining that an intentional deprivation of property does not constitute a violation of the Due Process Clause "if a meaningful postdeprivation remedy for the loss is available").[4]  Plaintiff exercised his right and filed grievances related to this, and other, matters.  *Second Am. Compl.* [#24] at 26-30; *Response* [#82] at 15 ("Going up the chain of command brought no relief and [the] grievance process was exhausted.").  Simply alleging that he did not receive his desired outcome does not indicate that the prison's administrative remedy is not meaningful.

With respect to Plaintiff's allegations regarding searches and threatened deletion of his documents stored in the prison computer system, as noted above, prisoners are not entitled to the same privacy rights as other citizens.  *See Rodriguez-Rodriguez*, 4 F. App'x at 639.  In order for a constitutional right to be clearly established, "'there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains.'"  *Mocek v. City of Albuquerque*, 813 F.3d 912, 922 (10th Cir. 2015) (citing *Morris v. Noe*, 672 F.3d 1185, 1196 (10th Cir. 2012)).  Plaintiff has not directed the Court's attention to any case law regarding prisoner's privacy rights with respect to documents stored in prison computers, nor was the Court able to locate any on its own review.[5]  *See generally Response* [#82].  Thus, the Court cannot conclude that any such right is clearly established

---

[4]  To the extent that Plaintiff alleges that the grievance process does not provide due process, the Court addresses his assertions in Part III.G.

[5]  Additionally, it does not appear that prisoners would have any greater right to property on prison computer systems than they have to property held in their cells.  *See Rodriguez-Rodriguez*, 4 F. App'x at 639.

sufficient to find that Defendant Anderson is not entitled to qualified immunity.

Accordingly, the Court finds that Plaintiff has failed to sufficiently allege any constitutional violation with respect to his cell search and seizure, and that Plaintiff's rights are not clearly established with respect to his legal documents stored in the prison computer. Thus, the Court concludes that Defendants are entitled to qualified immunity on this claim. *See Escobar*, 668 F. Supp. 2d at 1293. The Court respectfully **recommends** that Claim Two be **dismissed with prejudice**. *See Brereton*, 434 F.3d at 1219 ("A dismissal with prejudice is appropriate where a complaint fails to state a claim under Rule 12(b)(6) and granting leave to amend would be futile.").

## C.    Claim Three: Fourteenth Amendment Claims Regarding Access to Legal Files

Plaintiff reiterates here that Defendants are denying him access to his legal files and sharing them without his consent. *Second Am. Compl.* [#24] at 39. He states that these actions violate due process and that his equal protection rights are also being violated because these actions are discriminatory.[6] *Id.*

As an initial matter, to the extent that Plaintiff asserts that he brings this claim pursuant to the Fifth Amendment in part, his claim lacks merit. The Fifth Amendment applies to the conduct of federal, rather than state, actors. *See Dusenbery v. United States*, 534 U.S. 161, 167 (2002). Defendants are employed by the state of Colorado, and, as such, their conduct is governed by the Fourteenth Amendment. The Court analyzes Plaintiff's claim accordingly.

---

[6] Based on the Court's interpretation of Plaintiff's allegations in this claim, it appears that he is asserting substantive due process violations. To the extent that Plaintiff is asserting procedural due process violations with respect to grievance procedures, that claim may be dismissed for the same reasons set forth in Part III.G.

Although it may be possible to analyze Plaintiff's claim under the framework of substantive due process, such analysis is disfavored if the claim can be analyzed under "an explicit textual source of constitutional protection." *Graham v. Connor*, 490 U.S. 386, 395 (1989). Because this claim is practically indistinguishable from his First Amendment claim, the Court will not analyze these allegations under the framework of substantive due process as well; instead, the substantive due process claim may be dismissed for the same reasons set forth in Part III.A.

In order to state an equal protection claim, Plaintiff must allege facts demonstrating that he intentionally was treated differently from similarly situated inmates or former inmates. *See Penrod v. Zavaras*, 94 F.3d 1399, 1406 (10th Cir. 1996). "Equal protection of the laws doesn't guarantee equal results for all." *SECSYS, LLC v. Vigil*, 666 F.3d 678, 684 (10th Cir. 2012) (internal quotation marks omitted). Instead, the Equal Protection Clause "seeks to ensure that any classifications the law makes are made without respect to persons, that like cases are treated alike, that those who appear similarly situated are not treated differently without, at the very least, a rational reason for the difference." *Id.* (internal quotation marks omitted). Additionally, Plaintiff must allege that "the distinction between himself and other inmates was not reasonably related to some legitimate penological purpose." *See Trujillo v. Williams*, 465 F.3d 1210, 1228 (10th Cir. 2006) (internal quotations omitted).

Plaintiff alleges that inmates with impending court deadlines are given preference for appointments, and that he is given appointments to assist other inmates more frequently than to work on his own legal matters. *Second Am. Compl.* [#24] at 16. He also alleges that his personal glasses were confiscated. *Id.* at 23. While Plaintiff alleges that other

inmates have been treated differently from Plaintiff, these allegations do not sufficiently show that they were similarly situated. The mere fact that they are also inmates does not meet the "similarly situated" requirement. *See Trujillo*, 465 F.3d at 1228. For example, Plaintiff has not alleged that he has had impending court deadlines and was not scheduled for appointments,[7] that inmates in similar circumstances receive law library appointments both for assisting others and doing their own work, or that other inmates have retained their personal eyeglasses. Furthermore, Plaintiff has not sufficiently alleged that Defendants lack a legitimate penological interest in prioritizing inmates with deadlines, limiting law library appointments, or confiscating personal items. *See Trujillo*, 465 F.3d at 1228.

Finding that no substantive due process or equal protection violation has sufficiently been alleged, the Court concludes that Defendants are entitled to qualified immunity on this claim. *See Escobar*, 668 F. Supp. 2d at 1293. The Court respectfully **recommends** that Claim Three regarding Fourteenth Amendment violations be **dismissed without prejudice**. *See Reynoldson*, 907 F.2d at 127 (holding that prejudice should not attach to a dismissal when plaintiff has made allegations "which, upon further investigation and development, could raise substantial issues").

## D.    Claim Four: Right to Confidentiality

Reading the pleadings liberally, Plaintiff appears to allege that his right to confidentiality was violated because Defendant Anderson allegedly accessed and shared

---

[7] Plaintiff alleges that on one occasion, Defendant Anderson took "2 hours of Plaintiff's law library session to read through his files and motions to the court (on 2/23/16) to create excuses to block/deny them from being printed-out . . . leaving Plaintiff unable to get his actions to court." *Second Am. Compl.* [#24] at 13. However, he does not contend that he missed any court deadlines on that occasion. He also alleges that he "missed (this Court's) original 9/15/16 deadline;" however, on the Court's review of the docket, Plaintiff's filings around that date appear timely. *See id.* at 22.

his legal files with others.  *Second Am. Compl.* [#24] at 40-41.  Plaintiff states that his right is protected by the First, Fourth, Fifth, Eighth, and Fourteenth Amendments.  *Id.*  The majority of his allegations in this claim are duplicitous of his other constitutional claims addressed elsewhere in this Recommendation, and are therefore not reconsidered here. Plaintiff argues that, because he is proceeding pro se, he is his own counsel and is therefore entitled to attorney-client privilege, including protection of work product. *Response* [#82] at 12.

To the extent that Plaintiff alleges a breach of attorney-client privilege, as an initial matter, "the attorney-client privilege is merely a rule of evidence; it has not yet been held a constitutional right."  *See Howell v. Trammell*, 728 F.3d 1202, 1222 (10th Cir. 2013) (citations omitted); *see also Bradt v. Smith*, 634 F.2d 796, 800 (5th Cir. 1981) ("As a creature of state law, the attorney-client privilege cannot be asserted as a basis for recovery under § 1983.") (citations omitted).  Thus, Plaintiff's claim fails as a matter of law. Additionally, this Court has previously held that the attorney-client privilege does not apply to pro se litigants.  *See Carbajal v. St. Anthony Cent. Hosp.*, No. 12-CV-02257-REB-KLM, 2014 WL 2459713, at *2 (D. Colo. June 2, 2014) (citing *United States v. Ruedlinger*, No. 97-40012-01-RDR, 1998 WL 45002, at *2 (D. Kan. Jan. 7, 1998) (stating that "the defendant must understand that, although he is representing himself, he is not an attorney and he is not entitled to the privileges and benefits that an attorney would receive")).  The cases Plaintiff cites to in the Response are inapposite, as they consider the nature of documents prepared by counsel.  *Response* [#82] at 12.

Accordingly, the Court concludes that Defendant Anderson is entitled to qualified immunity on this claim, *see Escobar*, 668 F. Supp. 2d at 1293, and the Court respectfully

**recommends** that Claim Four be **dismissed with prejudice**.  *See Brereton*, 434 F.3d at 1219 ("A dismissal with prejudice is appropriate where a complaint fails to state a claim under Rule 12(b)(6) and granting leave to amend would be futile.").

**E.    Claim Five:  First Amendment Retaliation**

Plaintiff alleges that Defendants Wilson, Hoffman, Custer, Corey, Brown, and Sherwood confiscated Plaintiff's personal eyeglasses and other property from Plaintiff's cell in retaliation for the filing of grievances against Defendant Anderson regarding his access to law library services.  *Second Am. Compl.* [#24] at 42-44.  He alleges that Defendant Anderson has further retaliated by refusing to accept Plaintiff's signature on a document where he wrote "All rights reserved," further restricting his appointments, continuing to not allow Plaintiff to print documents, and sharing his materials with another prisoner.  *Id.* at 43.

Because a prisoner must first file a grievance in order to ultimately gain access to courts to state a claim for relief pursuant to 42 U.S.C. § 1997e, punishing him for actually filing a grievance would state a claim for both denial of access to the courts and violation of the First Amendment.  *Nordgren*, 762 F.2d at 853 ("It is also one aspect of the First Amendment right to petition the government for redress of grievances"); *Wildberger v. Bracknell*, 869 F.2d 1467, 1468 (11th Cir. 1989) (holding that retaliation for filing lawsuits and administrative grievances "violates both the inmate's right of access to the courts and the inmate's First Amendment rights").  Therefore, "[p]rison officials may not retaliate against or harass an inmate because of the inmate's exercise of his right of access to the courts."  *Maschner*, 899 F.2d at 947.  "This principle applies even where the action taken in retaliation would be otherwise permissible."  *Id.* at 948.

Nevertheless, a prisoner is "not inoculated from the normal conditions of confinement experienced by convicted felons serving time in prisons merely because he has engaged in protected activity." *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998). That is, not "every response to a prisoner's exercise of a constitutional right gives rise to a retaliation claim." *Dawes v. Walker*, 239 F.3d 489, 492-93 (2d Cir. 2001), overruled on other grounds by *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506 (2002). Instead, "in order to establish a First Amendment retaliation claim, a prisoner must demonstrate that he was (1) engaged in protected conduct; (2) that he suffered an adverse action; and (3) that a causal connection exists between the protected conduct and the adverse action." *Baldauf v. Hyatt*, No. 01-cv-01315-REB-CBS, at *7 (D. Colo. Jan. 31, 2008) (unpublished decision) (quoting *Scott v. Churchill*, 377 F.3d 565, 569 (6th Cir. 2004)). "[W]hen the plaintiff alleges that the defendant's action was taken in retaliation for protected speech, our standard for evaluating that chilling effect on speech is objective, rather than subjective . . . . [A] trivial or de minimis injury will not support a retaliatory prosecution claim." *Shero v. City of Grove, Okl.*, 510 F.3d 1196, 1203 (10th Cir. 2007) (internal citation and quotations marks omitted). Additionally, "[a]n inmate claiming retaliation must allege specific facts showing retaliation because of the exercise of the prisoner's constitutional rights." *Peterson*, 149 F.3d at 1144 (internal quotation marks and citation omitted). "[A] plaintiff must prove that but for the retaliatory motive, the incidents to which he refers, . . . would not have taken place." *Id.*

Plaintiff's filing of grievances and lawsuits is protected conduct, and thus satisfies the first element of a First Amendment retaliation claim. *See, e.g., Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995) (holding that prison officials may not retaliate against prisoners

for filing lawsuits or petitioning for redress of grievances); *Nordgren*, 762 F.2d at 853.

Next, the Court considers the second requirement (i.e., whether Plaintiff suffered an adverse action). This factor contemplates action that results in the chilling of the inmate's exercise of his constitutional rights. *See Rogers v. Garcia*, No. 08-cv-02821-WYD-MJW, 2010 WL 3547432, at *4 (D. Colo. Sept. 3, 2010) (stating that "[r]etaliation, though it is not expressly referred to in the Constitution, is nonetheless actionable because retaliatory actions may tend to chill individuals' exercise of constitutional rights." (citation and internal quotation omitted)); *see also Escobar v. Brown*, No. 06-cv-01222-CMA-KLM, 2010 WL 5230874, at *5-6 (D. Colo. Dec.16, 2010) (finding that plaintiff was not afraid to file grievances as a result of unsubstantiated allegations of threats of retaliation, as evidenced by plaintiff's continued filing of grievances). Plaintiff's allegations do not suggest that he has been dissuaded in the slightest from filing grievances as a result of Defendants' alleged actions. Rather, he indicates the opposite, in that he alleges in numerous places in the Second Amended Complaint [#24] that he has "filed incident reports and grievances," which he has submitted to various people, and also otherwise raised complaints. *See, e.g.*, *Second Am. Compl.* [#24] at 24, 26 (mentioning grievances filed with Sherwood, V. Wilson, and N. Wilson), 27 (alleging that Plaintiff discussed complaints with living unit captain Vorwald). Thus, the Court finds that Plaintiff has not sufficiently alleged that the exercise of his rights has been chilled. *See also Escobar*, 2010 WL 5230874, at *5-6.

Lastly, even if Plaintiff had succeeded on the first and second elements, he has failed to plead specific facts demonstrating retaliatory motive. *See Peterson*, 149 F.3d at 1144. Plaintiff alleges that "[i]t was at this same time (when these grievances were being addressed) exposing Anderson's conduct denying legal access and abusing her authority

in the library, that [Defendant Wilson] just suddenly chose to call Plaintiff's living unit to order that they take his personal eyeglasses." *Second Am. Compl.* [#24] at 27. "[W]ithout supporting factual allegations, temporal proximity between an alleged exercise of one's right of access to the courts and some form of jailhouse discipline does not constitute sufficient circumstantial proof of retaliatory motive to state a claim." *Friedman v. Kennard*, 248 F. App'x 918, 922 (10th Cir. 2007) (affirming dismissal of complaint because plaintiff failed to allege more than temporal proximity in support of his retaliation claim) (citations omitted). Plaintiff offers no further allegations supporting retaliatory motive beyond this alleged suspicious timing.

Finding that no constitutional violation has sufficiently been alleged, the Court concludes that Defendants are entitled to qualified immunity on this claim. *See Escobar*, 668 F. Supp. 2d at 1293. The Court respectfully **recommends** that Claim Five regarding First Amendment retaliation be **dismissed without prejudice**. *See Reynoldson*, 907 F.2d at 127 (holding that prejudice should not attach to a dismissal when plaintiff has made allegations "which, upon further investigation and development, could raise substantial issues").

**F. Claim Six: Eighth Amendment Medical Deliberate Indifference**

This claim remains against Defendants Wilson, Hoffman, Custer, Corey, Brown, and Sherwood. The Eighth Amendment to the United States Constitution provides that "cruel and unusual punishments" shall not be inflicted. U.S. Const. amend. VIII. Punishments that "involve the unnecessary and wanton infliction of pain" violate this provision. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). Because prisoners "must rely on prison authorities

to treat [their] medical needs," *Estelle v. Gamble*, 429 U.S. 97, 103 (1976), the Supreme Court has held that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." *Id.* at 104 (quoting *Gregg*, 428 U.S. at 173). The test for deliberate indifference is both objective and subjective: a prisoner must establish that he was deprived of a medical need that is, objectively, "sufficiently serious," *Farmer v. Brennan*, 511 U.S. 825, 834 (1994), and that the defendant subjectively knew of and disregarded "an excessive risk to [the prisoner's] health or safety." *Id.* at 837.

In order to satisfy the subjective prong of the test for deliberate indifference, a plaintiff must allege that each defendant "kn[ew] of and disregard[ed] an excessive risk to inmate health and safety." *Farmer*, 511 U.S. at 837. A defendant knows of and disregards an excessive risk to a prisoner's health or safety when he is both "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," and he actually draws that inference. *Id.* Importantly, "it is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishment Clause." *Whitley v. Albers*, 475 U.S. 312, 319 (1986). Accordingly, a prisoner does not have a valid claim of deliberate indifference simply because he was denied "a particular course of treatment" that he desired. *Callahan v. Poppell*, 471 F.3d 1155, 1160 (10th Cir. 2006). "[A] prison doctor remains free to exercise his or her independent professional judgment," *id.* (citing *Dulany v. Carnahan*, 132 F.3d 1234, 1240 (8th Cir. 1997)), and "[m]edical decisions that may be characterized as 'classic examples of matters for medical judgment,' such as whether one course of treatment is preferable to another, are beyond the [Eighth] Amendment's purview." *Id.* (citing *Snipes*

*v. DeTella*, 95 F.3d 586, 591 (7th Cir. 1996)).

Defendants argue that neither the objective nor subjective elements of the test are met here. *Motion* [#69] at 18. Regarding the objective prong, Defendants contend that Plaintiff has not been entirely denied access to eyeglasses, as he was given state-issued eyeglasses that matched his last prescription. *Id.* at 18. Plaintiff alleges that the state-issued eyeglasses causes Plaintiff blurred vision, headaches, balance problems, nausea, eyestrain, and depth-perception problems. *Second Am. Compl.* [#24] at 25, 45. He alleges that, without the glasses, he is "left blind," unable to see more than four inches. *Id.* at 45, 19.

The Tenth Circuit Court of Appeals has previously held that removal of prescription eyeglasses from a prisoner "could constitute a violation of his right to be free of cruel and unusual punishment." *Mitchell v. Maynard*, 80 F.3d 1433, 1443 (10th Cir. 1996). Other courts have found that prisoners met the objective prong where they lacked eyeglasses and suffered symptoms, including permanent symptoms such as deterioration of vision, without them. *See, e.g.*, *Koehl v. Dalsheim*, 85 F.3d 86, 88 (2d Cir. 1996) (holding inmate's need for prescription eyeglasses constituted a serious medical condition where, as result of not having glasses, the inmate suffered headaches, his vision deteriorated, and he was impaired in daily activities); *Neal v. Bolton*, 2008 WL 5156685 at *18 (N.D. Fla. Dec. 9, 2008) (recognizing claim for deprivation of prescription eyeglasses where it caused plaintiff pain and possible deterioration of vision); *Benter v. Peck*, 825 F.Supp. 1411, 1416 (S.D. Iowa 1993) (holding that prisoner had a serious medical need where his eyesight, without glasses, fell within the parameters of blindness).

However, this case is distinguishable. Here, Plaintiff was provided with state-issued

eyeglasses.  *See Second Am. Compl.* [#24] at 18.  Thus, he does not lack them entirely, in contrast to several of the cases cited above.  *See also Williams v. ICC Comm.*, 812 F. Supp. 1029 (N.D. Cal. 1992) (finding plaintiff stated a cognizable deliberate indifference claim when deprived of eyeglasses).  Additionally, aside from not being able to see well, Plaintiff has not alleged that he suffers from the other symptoms *without* the eyeglasses. *Compare Koehl*, 85 F.3d at 88.  Thus, in order to avoid the possibly painful or physical uncomfortable symptoms, Plaintiff can remove the eyeglasses.  Although, as Plaintiff indicates, he is forced to choose whether to suffer symptoms or lack of vision, the allegations do not rise to the level of "unnecessary and wanton infliction of pain" required for an Eighth Amendment claim.  *See Gregg*, 428 U.S.at 173.

Finding that no constitutional violation has sufficiently been alleged, the Court concludes that Defendants are entitled to qualified immunity on this claim.  *See Escobar*, 668 F. Supp. 2d at 1293.  The Court respectfully **recommends** that Claim Six regarding medical deliberate indifference be **dismissed without prejudice**.  *See Reynoldson*, 907 F.2d at 127 (holding that prejudice should not attach to a dismissal when plaintiff has made allegations "which, upon further investigation and development, could raise substantial issues").

## G.    Claim Seven: Grievance Policy and Procedure

Plaintiff alleges that he has been denied "reasonable access to administrative remedy forms and inappropriate responses by state officials," which has resulted in the lack of a meaningful remedy.  *Second Am. Compl.* [#24] at 47.  He states that his access to grievance forms has been "delayed, denied and hindered."  *Id.* at 19.  He further alleges

that the prison's policy barring timely access to grievance forms violates his constitutional rights.[8] *Id.* This claim remains solely against Defendants Chapdelaine and Raemisch.

"The Due Process Clause guarantees due process only when a person is to be deprived of life, liberty, or property." *Chambers v. Colo. Dep't of Corr.*, 205 F.3d 1237, 1242 (10th Cir. 2000) (quotations omitted). A plaintiff must make two showings in order to proceed on a procedural due process claim. *Bartell v. Aurora Pub. Schs.*, 263 F.3d 1143, 1149 (10th Cir. 2001). First, he must show that he possesses a protected liberty interest. *Id.*; *Veile v. Martinson*, 258 F.3d 1180, 1184-85 (10th Cir. 2001). Second, he must show that the procedures used in addressing his liberty interest were inadequate under the circumstances. *Bartell*, 263 F.3d at 1149. The Supreme Court has held that, for prisoners, a liberty right exists only where an interference with that right would impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Connor*, 515 U.S. 472, 484 (1995).

Plaintiff's allegations in this claim pertain to the failure of grievance policy and procedures to provide administrative remedies to Plaintiff. *Second Am. Compl.* [#24] at 47-50. It is well established that "prisoners have no liberty interest in prison grievance procedures." *See Todd v. Bigelow*, 497 F. App'x 839, 842 (10th Cir. 2012) (citing *Boyd v. Werholtz*, 443 F. App'x 331, 332 (10th Cir. 2011)); *Cipriani v. Schenectady Cty.*, No. 9:06-CV-0889(GTSDRH), 2009 WL 3111681, at *22 (N.D.N.Y. Sept. 24, 2009) (stating that

---

[8] Plaintiff states in passing that his equal protection rights are being violated, yet the allegations related to this claim do not sound in equal protection whatsoever. *See Second Am. Compl.* [#24] at 48. None of his allegations indicate that he has been treated differently from similarly situated inmates. *See Penrod*, 94 F.3d 1406. Thus, the Court focuses on Plaintiff's clearly asserted procedural due process claim.

there is "no constitutional right of access to a grievance process"). Thus, his procedural due process claim must fail. With respect to Plaintiff's specific contention that he is being blocked or delayed from filing grievances, no liberty interest arises because he may nonetheless file a lawsuit to seek redress. *See Ross v. Blake*, 136 S. Ct. 1850, 1858 (2016) ("An inmate . . . must exhaust available remedies, but need not exhaust unavailable ones."). Administrative remedies may be unavailable when prison officials are "unable or consistently unwilling to provide any relief to aggrieved inmates," when the administrative remedies scheme is "so opaque that it becomes, practically speaking, incapable of use," or when prison officials "thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1859-60.[9]

Therefore, the Court concludes that Plaintiff has failed to state a procedural due process claim, and that Defendants are entitled to qualified immunity. *See Escobar*, 668 F. Supp. 2d at 1293. Accordingly, the Court respectfully **recommends** that Claim Seven be **dismissed with prejudice**. *See Brereton*, 434 F.3d at 1219 ("A dismissal with prejudice is appropriate where a complaint fails to state a claim under Rule 12(b)(6) and granting leave to amend would be futile.").

### III. Conclusion

Based on the foregoing,

The Court respectfully **RECOMMENDS** that the Motion [#69] be **GRANTED**.

If this Recommendation is accepted, the following claims will be **dismissed with prejudice**:

---

[9] Plaintiff's allegation that the grievance process leaves him without a meaningful remedy because it denies him access to the courts is simply incorrect.

(1) Claim Two regarding search and seizure of Plaintiff's property;

(2) Claim Four regarding Plaintiff's asserted right to confidentiality; and

(3) Claim Seven regarding grievances.

If this Recommendation is accepted, the following claims will be **dismissed without prejudice**:

(1) Claim One regarding access to the courts;

(2) Claim Three regarding the Fourteenth Amendment claim;

(3) Claim Five regarding the First Amendment retaliation; and

(4) Claim Six regarding the Eighth Amendment claim.

IT IS FURTHER **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of the Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. A party's failure to serve and file specific, written objections waives *de novo* review of the Recommendation by the District Judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colo. Dept. of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996). A party's objections to this Recommendation must be both timely and specific to preserve an issue for *de novo* review by the District Court or for appellate review. *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

BY THE COURT:

Dated: February 27, 2018

Kristen L. Mix
United States Magistrate Judge

-23-